IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 6, 2007

**STATE OF TENNESSEE v. CLIFFORD BRYANT JOHNSON**
**Appeal from the Circuit Court for Madison County**
**No. 05-714    Roger A. Page, Judge**

**No. W2006-01526-CCA-R3-CD  - Filed March 12, 2007**

The defendant, Clifford Bryant Johnson, was convicted of one count of aggravated robbery, a class B felony, and sentenced to nine years in prison as a Range I, standard offender. The defendant appeals his conviction, claiming that the evidence is insufficient to support his conviction. We conclude that the evidence is sufficient and affirm the defendant's conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Joseph Howell, District Public Defender; Paul E. Meyers, Assistant District Public Defender (on appeal); Ramsdale O'DeNeal, Jackson, Tennessee (at trial), for the appellant, Clifford Bryant Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Jerry Woodall, District Attorney General; James W. Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

At trial, Rebecca Story testified that on July 12, 2005, she was working as a cashier at a Coastal gas station and convenience store on the Route 45 Bypass in Jackson, Tennessee. That afternoon, two African American men, one tall and wearing a white shirt, and the other short, stocky, and wearing a black shirt, entered the store and picked up some gum. The man in the black shirt then went to Story's cash register to purchase the gum. Story testified that after she opened the cash register, the man in the black shirt told her to keep the register open or the other man would shoot her. According to Story, when she looked up, the man in the white shirt had a gun pointed at Story approximately six inches from her face. Story testified that the man in the white shirt told the man in the black shirt to take the money, and shortly thereafter the man in the black shirt jumped on the counter and took the money from the register. The two men then left the store, got into a gray

vehicle driven by a third man, and drove off. Story testified that before the men drove away, she was able to jump over the counter and view the vehicle's license plate number, which she wrote down. Story then called 911 and filed a police report.

Story testified that two days later, Sergeant Jerald Golden with the Jackson Police Department met with Story to discuss the incident. Sergeant Golden showed Story a photograph array, from which Story identified the man in the black shirt, the one who had taken the money from the store the day of the robbery. The man identified was the defendant.

On cross-examination, Story stated that the two men were in the store approximately four to five minutes before the robbery occurred. Also, Story stated that earlier that day, she saw a gray vehicle, similar to the one later used as the getaway car, pull into the store's parking lot. She stated that a man entered the store, looked around briefly, then exited the store. Story said that this man was the one who drove the getaway car after the robbery. Story said that she then saw three men standing in front of the gray car conversing for a short time before driving away. On redirect, Story testified that she did not believe that the man in the white shirt was forcing the defendant to participate in the robbery.

Sergeant Golden testified that after the robbery, he ran the vehicle's plates and discovered that the vehicle was owned by Dion Burton of Brownsville, Tennessee. Upon further investigation, Sergeant Golden discovered that the defendant was one of the men with whom Burton associated. Based on this information, the police made the defendant a suspect and Sergeant Golden placed the defendant's photograph in the array which Sergeant Golden showed Story on July 14. Sergeant Golden testified that Story positively identified the defendant's photograph in the array, stating that he was the one who had taken the money from the cash register the day of the robbery. On September 7, 2005, Sergeant Golden arrested the defendant. While in custody, the defendant signed a Miranda waiver and, refusing counsel, made a voluntary statement to police. The statement, which was read into evidence, noted that on the day of the robbery, the defendant and Burton were driving through West Tennessee on Interstate 40 when they stopped at a T.A. Truck Stop. Burton then pumped gas into his vehicle and drove off without paying. Later in the day, the two men picked up a third man, Harry Goff, and went to "the store at Old Hickory near the By-Pass," meaning the Coastal station. The defendant and Goff entered the store, purchased beverages, then drove off. According to the defendant's statement, later that day the defendant and Burton went back to the Coastal store, where Burton pulled a gun on the cashier and the defendant took the money. According to the defendant, however, it was Burton, and not the defendant, who told the cashier to give the men the money or Burton would shoot the cashier. In his statement, the defendant claimed that before the robbery occurred, he had no idea that Burton intended to rob the store.

The defendant testified on his own behalf. His account of the robbery mirrored his earlier statement to police—Burton was the one who pointed the gun at the cashier and verbally threatened the cashier, while the defendant took the money and did not say anything to the cashier. The defendant also testified that he had no idea that Burton, whom the defendant stated he had known for approximately three to four years before the robbery, intended to rob the store. The defendant

testified that the defendant took the money out of fear that Burton would shoot the cashier or the defendant if he refused to follow Burton's orders. On cross-examination, the defendant admitted that he had been with Burton earlier in the day when Burton took gas from the truck stop without paying for the gas.

## STANDARD OF REVIEW

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict. Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

## ANALYSIS
### *Aggravated Robbery*

The defendant was convicted of aggravated robbery in violation of section 39-13-402 of the Tennessee Code Annotated. Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. §39-13-401(a) (2006). One of the conditions under which robbery may be considered aggravated robbery is where the offense is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402(a)(1) (2006). At trial, the cashier and the defendant testified that Burton placed a gun in the cashier's face and that the defendant took money from the cash register. Thus, on appeal the defendant concedes that an aggravated robbery did in fact occur. However, the defendant argues that he cannot be held criminally responsible for the offense. We disagree.

### *Criminal Responsibility*

Under Tennessee law, "A person is criminally responsible as a party to an offense, if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." Tenn. Code Ann. §39-11-401(a) (2006). "Each party to an offense may be charged with commission of the offense." Id. § (b). A defendant is criminally responsible for an offense committed by the conduct of another if the defendant acts "with intent to promote or assist the commission of the offense or to benefit in the proceeds or results of the offense," and thereby "solicits, directs, aids, or attempt[s] to aid another person to commit the

-3-

offense." Tenn. Code Ann. § 39-11-402(2) (2006).

Our case law has held that presence and companionship with the perpetrators of a felony before and after the commission of the offense are circumstances from which one's participation in the crime may be inferred. State v. Jones, 15 S.W.3d 880, 890 (Tenn. Crim. App. 1999). No particular act need be shown. Id. It is not necessary for one to take a physical part in the crime; encouragement of the principal is sufficient. Id. (citing State v. McBee, 644 S.W.2d 425, 428 (Tenn. Crim. App. 1982)). In this case, the evidence produced at trial shows that the defendant's level of involvement went beyond presence, companionship, and encouragement.

Through its verdict, the jury rejected the defendant's claims that he had no knowledge of the robbery before its occurrence and that he took the money out of fear over his and the cashier's safety. Instead, the jury accepted Story's testimony that the defendant was an active and voluntary participant in the robbery of the gas station. He and Burton arrived together, the defendant ordered the cashier to keep the register open, and then the defendant, after jumping on the counter, took the money from the register while Burton held a gun in the cashier's face. The two men then left together. Viewed in the light most favorable to the state, this court concludes that a rational trier of fact could find beyond a reasonable doubt, based on the evidence presented, that the defendant was an active participant in the victim's robbery and therefore was criminally responsible for the offense.

## CONCLUSION

The evidence produced at trial was sufficient for a jury to find beyond a reasonable doubt that the defendant was guilty of aggravated robbery. Accordingly, the judgment of the trial court is affirmed.

D. KELLY THOMAS, JR., JUDGE